Affirmed and Memorandum Opinion filed October 28, 2004









Affirmed and Memorandum Opinion filed October 28,
2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS. 14-03-00655-CR

          14-03-00656-CR

____________

 

RODNEY
YBARRA, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee



 



 

On Appeal from the 262nd District Court

Harris County, Texas

Trial Court Cause Nos. 934,304 & 934,305



 



 

M E M O R A N D U M   O P I N I O N

Appellant Rodney Ybarra
challenges his convictions for indecency with a child and aggravated sexual
assault.  He claims the trial court erred
in allowing improper voir dire, denying his motion for mistrial, allowing a
witness to testify that appellant invoked his right to counsel, allowing
improper expert testimony, and excluding evidence that appellant allegedly had
committed his former wife to a drug treatment facility.  We affirm the trial court=s
judgment.








I.  Factual and Procedural Background

Rodney and Melissa Ybarra were
married in 1986 and divorced in 2003.  
In the course of their marriage, appellant and Melissa had three
daughtersCfifteen-year-old Jane[1],
thirteen-year-old Kane, and ten-year-old Lane. 
Because of appellant=s shift work and irregular schedule, he was often home alone
with the girls.

Appellant was a heavy drinker of alcohol, and over the years
his drinking worsened.  Appellant moved
in and out of his house.  After an
incident of leaving the house and subsequently returning home, Melissa noticed
that Jane was being very disrespectful to appellant.  Melissa confronted her daughter and she
replied, AYou just don=t know everything.@ 
Melissa asked Kane what had been happening.  Kane told Melissa that appellant had sexually
abused Jane.  Melissa then confronted
Jane with this allegation.  Jane admitted
it was true but stated that she did not want to talk about it because she did
not want anyone to know.  Melissa
gathered her children and drove them to a friend=s house.  

When Melissa confronted appellant about the allegations, he
denied them at first but eventually stated, AWell, if something did happen,
something may have happened when I was drunk.@ 
Melissa did not know all of the details at that time, and she was hoping
that it was an isolated incident, an accident, or a misunderstanding.  Eventually Melissa arranged for Jane to
receive counseling.  After Jane described
occasions of sexual assault to the counselor, the counselor informed Melissa
that the situation had to be reported to the police.  Melissa reported the abuse to the Deer Park
Police Department in October of 2002. 
All three of appellant=s daughters gave statements to the police. 








After the daughters went to the Children=s Assessment Center, Detective Magee
of the Deer Park Police Department called appellant and asked him if he wanted
to talk about the allegations.  When
appellant came to the Deer Park investigation division office, Detective Magee
read appellant legal warnings.  When
Detective Magee mentioned Jane=s allegations, appellant put his head down in his hands and
appeared upset.  According to Detective
Magee, appellant indicated that, Ait was possible he might have done
the things his daughter said, but he cannot be sure because he drank heavily at
the time and didn=t remember and he had blackouts.@ 
At the end of the interview, appellant declined to give a written
statement, saying that he wanted to contact his lawyer first. 

Appellant was charged by indictment with the offenses of
indecency with a child and aggravated sexual assault of a child as to
Jane.  See Tex. Pen. Code Ann. '' 21.11, 22.021 (Vernon 2003).  A jury found appellant guilty and assessed
punishment at imprisonment for ten years for the indecency conviction and
twenty years for the sexual assault conviction. 
Appellant raises eight issues on appeal.

II.  Analysis

A.        Did the trial court err in allegedly
allowing the prosecutor to advise the jury panel of her personal opinion during
voir dire?

In his first issue, appellant
argues that the trial court erred in allowing the prosecutor to advise the jury
panel of her personal opinions concerning the case during her voir dire
examination.  Appellant contends that the
prosecutor=s comment injected her personal
opinion regarding his guilt and violated his due process right to a fair trial.

It is improper for a prosecutor
to inject personal opinion in statements to the jury.  Johnson v. State, 698 S.W.2d 154, 167
(Tex. Crim. App. 1985).  In this case,
appellant complains that the prosecutor injected her personal opinion when she
stated, during her opening remarks in voir dire:








[State]:            It=s my privilege and my
honor to drive into work every day to represent all of you in this
courtroom.  Along the way when I went to
law school, I learned there was a lot more to being a prosecutor than putting
bad guys in jail.  I took an oath to see
that justice is done and I take that oath very seriously.  Sometimes it means I dismiss cases. Sometimes
it means I plea bargain them and sometimes it means I take them to trial and
fight tooth and nail for what I think is right. 

[defense]:       I=m going to object. The
prosecutor is interjecting her personal opinion into the merits of the case.

[court]:           Overruled.

[State]:            The really cool thing about going to
trial and bringing 12 citizens in here is you get a chance to experience that
same obligation, to see that justice is done, and I hope that at the end of the
experience, you find it as rewarding as I do. 


To support his contention,
appellant cites Zaiontz v. State in which the prosecutor stated during
voir dire that AI wouldn=t be here
if I didn=t believe the Defendant to be
guilty . . . .@  700 S.W.2d 303, 307 (Tex. AppCSan
Antonio 1985, pet. ref=d).  The Zaiontz court found that the
appellant had failed to object and the comment was not so prejudicial that it
could not have been cured with an instruction to disregard.  See id.  Appellant also cites Beltran, in which
this court indicated that the statement, AIf I
believed the man was not guilty I wouldn=t be here@ was
improper, although we concluded appellant had failed to preserve error.  See Beltran v. State, 99 S.W.3d 807,
811B12 (Tex.
App.CHouston
[14 Dist.] 2003, pet. ref=d).  In the two remaining cases appellant cites,
the prosecutor directly expressed an opinion that the defendant was
guilty.  See Villalobos v. State,
568 S.W.2d 134, 135 (Tex. Crim. App. 1978) (improper for State to argue in
closing that AI believe he is just as guilty as
he can possibly be@); Baldwin
v. State, 499 S.W.2d 7, 9 (Tex. Crim. App. 1973) (appellate court
admonished trial court that, in the event of a retrial, prosecution should
refrain from stating, AI think
that he=s guilty@ because
such argument was outside the realm of proper summation). 








In contrast, in this case,
appellant asserts that while the prosecutor did not directly express that she
believed appellant was guilty, she implicitly did so by her comments
contrasting appellant=s case to
others in which she moved to dismiss the case or negotiated a plea
bargain.  Appellant has not cited any
cases holding that statements such as those challenged in his first issue
constitute a statement that appellant is guilty.  Nor has appellant cited any cases holding
that such statements are impermissible. 
We conclude that the prosecutor=s
statements were general in nature and did not constitute a statement that the
prosecutor believed appellant was guilty. 
See Mendoza v. State, 552 S.W.2d 444, 446B47 (Tex.
Crim. App. 1977) (holding general statement in voir direCAour
staff, myself being one of its members, has the responsibility of seeing that
the individuals who are guilty of criminal offenses are brought to trial, and
hopefully brought to justice@Cwas not a
statement that appellant was guilty). 
The prosecutor=s remarks
were made before the jury was impaneled and evidence adduced.  Furthermore, the record reveals that the
prosecutor went on to clarify the presumption of innocence and the State=s burden
of proof.  See id.  We conclude that the trial court did not err
in overruling appellant=s
objection that the prosecutor injected her personal opinion into the merits of
the case.  Accordingly, we overrule
appellant=s first issue.

B.        Did the trial court abuse its discretion
in denying appellant=s motion for mistrial after Detective Magee
referred to an Aincident@ with Kane?

In his second issue, appellant
argues that the trial court erred in denying his motion for mistrial after
Detective Magee, on direct examination, injected evidence of an extraneous
offense allegedly committed against Kane. 








A trial court=s denial of a motion for mistrial is reviewed under an abuse
of discretion standard.  Simpson v.
State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003).  A witness=s inadvertent reference to an
extraneous offense is generally cured by a prompt instruction to
disregard.  Rojas v. State, 986
S.W.2d 241, 250 (Tex. Crim. App. 1998).  An
exception exists where the reference was clearly calculated to inflame the
minds of the jury or was of such damning character as to suggest it would be
impossible to remove the harmful impression from the jurors= minds.  Id. 
An instruction to disregard attempts to cure any harm or prejudice
resulting from events that already have occurred.  Young v. State, 137 S.W.3d 65, 69
(Tex. Crim. App. 2004).  A mistrial is
the trial court=s remedy
for improper conduct that is Aso
prejudicial that expenditure of further time and expense would be wasteful and
futile.@  Hawkins v. State, 135 S.W.3d 72, 77
(Tex. Crim. App. 2004).  Only in extreme
circumstances, where the prejudice is incurable, will a mistrial be required.  Id.

Appellant=s
complaint is based on the following exchange:

[State]: After [Jane] gave
her statement, what happened next?

[Detective Magee]: We set C [Jane] had made an
allegation that she believes there was an incident with [Kane].

[Defense Counsel]:
Objection, Your Honor. May I approach the bench?

(Jury out)

. . .

[Defense Counsel]: At this
time, Your Honor, I would ask the Court to instruct the jury to disregard the
last C

[Court]: I will be more
than happy to.

[Defense Counsel]: And,
Your Honor, rather than delay C

[Court]: Why change now?

[Defense Counsel]: C at that point, Your
Honor, I want to request a mistrial.

[Court]: You will be
allowed to do that in front of the jury, if you wish.  You can do it now.

[Defense Counsel]: I would
like to do it now.  I just didn=t want to waive error,
Your Honor.

[Court]: I understand.
Denied.

[Defense Counsel]: All
right, Judge.  Thank you.

[Court]: Bring them in.

(Jury in)

[Court]: Ladies and
gentlemen, you will not consider the last comment made by this witness.  You are not to use it for any purpose in your
deliberations and just erase it from your memory completely.  Let=s continue.

[Defense Counsel]: At this
time I will respectfully ask for a mistrial.

[Court]: Denied.








Outside the jury=s
presence, Detective Magee explained that he thought he was prohibited from
discussing any possible allegations of sexual abuse regarding Lane only and
that he was under the impression that he was able to discuss any allegations
regarding Kane.  The State responded that
Detective Magee had been told only to discuss allegations regarding Jane.  The trial court then admonished Detective
Magee that he was only to discuss offenses regarding Jane and that if Detective
Magee testified further concerning Kane or Lane, the court would hold him in
contempt. 

Notably, the complained-of
reference did not specify a prior bad act, but rather mentioned an Aincident@ with
Kane.  In addition, the trial court
promptly and emphatically instructed the jury not to consider the comment for
any purpose, and we presume the jury followed that instruction.  The State never emphasized the comment or
even mentioned it again.  The comment did
not reveal the nature of or any details about the incident.  And, to the extent the jury formed the
impression that the incident referred to an allegation of sexual abuse
regarding Kane, the record does not show that the reference was clearly
calculated to inflame the minds of the jury or that it was so inflammatory that
it could not be cured with the court=s
instruction to disregard.  Therefore, the
trial court did not abuse its discretion in denying appellant=s motion
for a mistrial.  See Simpson, 119
S.W.3d at 272B74.  Accordingly, we overrule appellant=s second
issue. 

C.        Did appellant preserve error as to his
complaint that the trial court erred in allowing Detective Magee to testify
that appellant invoked his right to counsel and refused to make a written
statement?

In his third issue, appellant
argues that the trial court erred by allowing Detective Magee to testify that
appellant invoked his right to counsel during a police interview and refused to
make a written statement.








Appellant filed a pretrial motion
to suppress statements that asserted numerous theories[2]
and concluded with a statement that Athe
admission of statements by [appellant] is a violation of [appellant]=s rights
pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United
States Constitution, Article 1, Section 9, 10, and 19 of the Texas
Constitution, and Articles 1.04, 1.05, 1.06, 14.01B14.04,
and 38.23 of the Texas Code of Criminal Procedure, and Texas Family Code '' 51.091,
52.01, 52.015, 52.02, and 52.026.@             Before voir dire, defense counsel
stated, AI have
filed a pretrial motion to suppress oral and video statements including any and
all law enforcement [sic] or related parties like CPS.@ The
trial court did not rule on the motion to suppress at that time.  Prior to Detective Magee=s
testimony, the trial court heard arguments on the motion to suppress.  Regarding the interview in question,
appellant moved the trial court to suppress all of his oral statements to
Detective Magee, stating:

. . . Your Honor it would
basically be on Sixth Amendment grounds, that he had a lawyer present and
requested his lawyer, Edwards v. United States, and also based on
voluntariness in that the officer had in C that would be the officer
had him come in, read the complaints or the allegations.  My client was emotional and based on the
Fifth and Fourteenth Amendments and Article 1, Section 13 and 19, Code of
Criminal Procedure 1.04, I would argue that the statements were involuntary.

I would also argue, Your Honor, that statements
[sic] violated the 38.22 [sic] Code of Criminal Procedure in that the oral
statements were not reduced to writing. 
In that sense, that statute would prohibit the introduction of that oral
statement in this case.  And on those
grounds, Your Honor, I would object to it. 









In sum, appellant sought to exclude
all oral statements from this police interview based on the following grounds:
(1) appellant invoked his Sixth Amendment right to counsel; (2) appellant=s
statements were involuntary; and (3) appellant=s
statements are inadmissible under article 38.22 of the Code of Criminal
Procedure because they were not reduced to writing.

As a prerequisite to presenting a
complaint for appellate review, the complaining party must show that the
complaint was made to the trial court, by a timely request, objection, or
motion that stated the grounds for the ruling with sufficient specificity to
make the trial court aware of the complaint, unless the specific grounds were
apparent from the context.  Tex. R. App. P. 33.1; Gutierrez v.
State, 36 S.W.3d 509, 510B11 (Tex.
Crim. App. 2001).  There are two main
purposes for requiring a timely, specific objection: (1) to inform the trial
court of the basis of the objection and give the trial court the opportunity to
make a ruling on it, and (2) to give opposing counsel the opportunity to take
appropriate action to remove the objection or provide other testimony.  Garza v. State, 126 S.W.3d 79, 82
(Tex. Crim. App. 2004).  By affording the
trial court an opportunity to rule on an objection, the trial court is able to
decide whether the evidence is admissible. 
Id.  If the trial court
decides the evidence is inadmissible, the jury is shielded from hearing it.  Id. 








In this case, the trial court
ruled on appellant=s motion
to suppress during trial.  However, the
motion was based on various theories and in arguing for suppression of the oral
statement, defense counsel never objected that it was improper for Detective
Magee to testify that appellant invoked his right to counsel and refused to
give a written statement.  In appellant=s motion
to suppress the oral statement and in his arguments regarding it at trial,
appellant did not voice the complaint that he now makes in his third issue on
appeal, and this complaint was not apparent from the context.  Therefore, the trial court did not have an
opportunity to rule on this complaint. 
Because the complaint was not preserved, nothing is presented for our
review.  See Rezac v. State, 782
S.W.2d 869, 870B71 (Tex.
Crim. App. 1990); Cooper v. State, 961 S.W.2d 222, 228 (Tex. App.CHouston
[1st Dist.] 1997, pet. ref=d).  Accordingly, we overrule appellant=s third
issue.

D.        Did the trial court err in allowing Dr.
Bailey to give expert opinions regarding Jane=s alleged vindictiveness
and whether Melissa was coaching Jane?

In his fourth and fifth issues,
appellant argues the trial court abused its discretion in allowing Jan Bailey,
a psychotherapist, to testify that, in Dr. Bailey=s
opinion: (1) Jane=s
allegations were not the result of vindictiveness; and (2) Melissa (Jane=s mother)
had not coached Jane.  Appellant contends
Dr. Bailey=s statements constitute an
impermissible comment on the truthfulness of Jane=s
allegations of sexual abuse by appellant. 


We review the trial court=s
decision to admit scientific expert testimony under an abuse-of-discretion
standard.  Sexton v. State, 93
S.W.3d 96, 99 (Tex. Crim. App. 2002). 

In this case, appellant complains
of the following exchanges:

[State]:  Did you conclude, based on your interviews
with [Jane], at any point that these allegations were arising out of some kind
of vindictiveness on her part?

[Defense]: Objection.
Speculation, Your Honor. Improper expert testimony.

[Court]: She may answer if
she has an opinion based on her expertise and observation; otherwise she may
not answer.

[Dr. Bailey]: No.

[State]: No, you did not
feel it arose out of any vindictiveness on her part?

[Dr. Bailey]: That=s right.

[State]: Based on your
interviews with [Jane], did it seem she was out to get her father in any way?

[Dr.
Bailey]: Not at all.         

. . . 

[State]: Did you get the
impression that [Melissa] was vindictive?

[Defense]: Objection, your
Honor.  That=s not relevant.  That=s outside the scope of her
expertise.








[Court]: Sustained.

[State]: Did you form the
opinion that she was coaching [Jane]?

Defense: Objection. Same
objection, Your Honor.

Court: Overruled.

[Dr. Bailey]: No.

[State]: You are not here
to tell the jury that children never lie?

[Dr. Bailey]: No.

[State]: As far as sex
abuse goes, are there certainly things you look for to determine whether or not
you think the child might be lying?

[Dr. Bailey]: Typically
you are going to see some pretty disturbing disorders in a child who is going
to lie about it.  You are going to see
attachment disorder in a child with a long, long history of abuse and neglect
and no attachment to people, no kind of conscience, and I mean C

[State]: Did you see any
of those things in [Jane] to indicate she might not be telling the truth?

[Dr.
Bailey]: No.








Whether a psychiatrist=s
testimony crosses the line from offering permissible statements that would
assist the jury in deciding the case to impermissibly telling the jury he
thought the complainant was telling the truth is a close question.  See Schutz v. State, 957 S.W.2d 52 (Tex.
Crim. App. 1997).  However, in this case
we are not presented with that issue because appellant=s trial
objection does not comport with the issue now raised on appeal.  To preserve error as to the allegedly erroneous
admission of evidence, one must properly object and present his complaint to
the trial court.  Tex. R. App. P. 33.1(a); Ibarra v.
State, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999).  At trial, appellant=s counsel
objected to one question regarding vindictiveness on the basis of Aspeculation@ and Aimproper
expert testimony.@  Appellant=s counsel
also objected to a question regarding alleged coaching by Melissa on the basis
that it was not relevant and that it was outside the scope of Dr. Bailey=s
expertise.  However, on appeal, appellant
argues that Dr. Bailey invaded the jury=s
province by improperly commenting on Jane=s
truthfulness.  See Schutz, 957
S.W.2d at 59B74.  Appellant did not voice this objection in the
trial court and the objections he made did not inform the trial court of the
complaint he now makes on appeal.  See
Kipp v. State, 876 S.W.2d 330, 336 (Tex. Crim. App. 1994) (plurality op.)
(stating appellant=s issue
regarding an improper opinion on the credibility of complainant is different
from the speculation objection made at trial); Uribe v. State, 2003 WL
1986975, at *2 (Tex. App.CHouston
[14th Dist.] May 1, 2003, pet. ref=d) (not
designated for publication) (holding appellant failed to preserve error as to
his complaint under Shutz that expert improperly commented on
complainant=s truthfulness because appellant
objected in the trial court based on speculation rather than voicing his
appellate complaint in the trial court). 
Because none of the objections appellant voiced at trial comport with
his appellate issue, appellant has not preserved this issue for appellate
review.  See Penry v. State, 903
S.W.2d 715, 763 (Tex. Crim. App. 1995).

Furthermore, presuming for the
sake of argument that appellant had preserved error and that it was an abuse of
discretion to allow such testimony, any such error would be harmless because
the same evidence was admitted elsewhere in the record without objection. See
Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).  As can be seen by the portion of the record
quoted above, Dr. Bailey testified, without objection, that Jane was not acting
out of vindictiveness and that Dr. Bailey did not see any of the factors that
typically would indicate that an accuser might not be telling the truth.  Therefore, even if the alleged error had been
preserved, it would not be reversible error.  See Valle v. State, 109 S.W.3d 500, 509
(Tex. Crim. App. 2003).  Accordingly, we
overrule appellant=s fourth
and fifth issues.

E.        Did the trial court err in excluding
testimony that appellant allegedly had Melissa committed to a drug treatment
facility? 








In his sixth issue, appellant
contends the trial court abused its discretion in excluding evidence that
Melissa allegedly had a problem in the past with prescription drugs and that
appellant previously had Melissa committed to a drug treatment facility.  On appeal, appellant argues that this
exclusion of evidence violated his right to confront Melissa regarding a
possible motive for her to coach Jane to falsely accuse him. 

To preserve error for appellate
review under Texas Rule of Appellate Procedure 33.1(a), the record must show
that: (1) the complaining party made a timely and specific request, objection,
or motion; and (2) the trial court either ruled on the request, objection, or
motion (expressly or implicitly), or refused to rule and the complaining party
objected to that refusal.  Geuder v.
State, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003).  A trial court=s grant
or denial of a motion in limine is a preliminary ruling only and normally
preserves nothing for appellate review.  Id.
at 14B15.  Error may not be predicated on a ruling
excluding evidence unless the substance of the evidence was made known to the
trial court by an offer of proof or bill of exceptions or was apparent from the
context in which the questions were asked.  Tex. R. Evid. 103(b); Guidry v.
State, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999).  Absent a showing of what such testimony would
have been, or an offer of a statement
concerning what the excluded evidence would show, nothing is preserved for
appellate review.  Guidry, 9
S.W.3d at 153. 

In this case, the trial court
granted the State=s motion
in limine that requested appellant approach the bench before introducing
anything having to do with Melissa=s alleged
prescription drug use, drug-use treatment, alcohol use, or similar
matters.  After the State rested, the
following exchange occurred outside the presence of the jury:

[Defense]:  Your Honor, I would ask the Court at this time
if I could address the motion in limine by the State . . . . The Court asked me
to approach the bench before I brought in things about Melissa, the mother of
[Jane=s] [sic] background.  I would like to do that with these witnesses.

[Court]: What kind of
background?








[Defense]: She=s a drug addict or she has
been a drug addict.  She=s had problems with
theft.  The reason for that, Your Honor,
is because her drug addictions and her problems with drugs contributes to the
child=s state of mind in terms
of being able to C well, to be
rational.  And, therefore, I would like C that child is confused
and by the fact that the mother has got problems may have affected the child as
well as the father=s drinking and the father=s extramarital affair.

Also, Your Honor, that
appellant will provide testimony that one of the reasons, one of the problems
he had with the children is that when he found out his wife was on drugs, he
took her to rehab, attended rehab, came out of rehab and he assumed the budget,
the household and the children, especially [Jane], became very resentful of the
fact that he had to cut the purse strings. 
He was a little more rigid and a little more disciplined about that and
that caused a problem.

[Court]: If you want to go
into, I=ll allow you to go into
that, that for some reason the child was resentful of him, but I have seen
nothing C well, really, to me,
makes sense as a reason to go into whether or not Melissa Ybarra had a drug
problem at some point.  You are not
saying she was on drugs when she testified?

[Defense]: No, no.  She may be treated by now.

[Court]: You are not
saying she was on drugs when she when she [sic] observed the things that she
testified about?

[Defense]: No, sir.

[Court]: Okay. No. I won=t.

[Defense]: Judge could I
just have one more thing for the record? The expert who testified that in her
opinion Melissa appeared to be a mother of caring nature, stable mother.  It would go to that, impeaching the expert=s analysis and ability to
make findings and I would relate that to her inadequacy in terms of C if she can=t properly assess Melissa,
she can=t properly assess the
victims, and that=s another reason I wanted
to introduce that.

. . . 

[Court]: No. No, sir.  I will not let you C no, I do not agree with
your assessment of that.  I will not let
you go into that.  I feel that the
prejudicial value far outweighs any probative value that may be stretched to C that we may stretch to
reach under that evidence.

[Defense]: Can I just put
something just for the record, my specific objections, just for the record?

[Court]: I thought you
just did that.








[Defense]: I just wanted
to cite the statutes, but just basically the Sixth Amendment and the Texas
Constitution relating to the effective cross C effective representation
of counsel and offering the defense due process, Your Honor.

[Court]: All right.  My ruling is the same. Again, if things
change, then that stuff C the evidence that you=re seeking to offer
becomes relevant, I will certainly reconsider that.  But as it stands right now, for the basis
that it is proffered, I find that it is C the prejudicial value
highly outweighs the probative value. 

 

It is unclear whether appellant=s theory
for the introduction of this evidence was the same in the trial court as it is
on appeal.  But, in any event, we
conclude that appellant did not preserve error by making sure that the record
reflected what the excluded testimony would have been.  See Guidry, 9 S.W.3d at 153.  In this case, appellant merely offered that
one or more unnamed witnesses allegedly would testify that appellant, at some
unspecified point in the past, had committed Melissa to a drug rehabilitation
facility.  Consequently, the record
before us contains no evidence of what the excluded testimony would have been,
much less what it would have shown.  For
example, in assessing the admissibility of this evidence, it would be important
to know whether appellant allegedly had Melissa committed to a drug treatment
facility one month before Melissa reported Jane=s
allegations to the police or eleven years before this report. Because we have
no way of determining when and under what circumstances appellant allegedly had
Melissa committed, or anything else regarding the alleged commitment, it is
impossible to properly review whether the trial court erred in excluding this
evidence.  See id.  Accordingly, we overrule appellant=s sixth
issue.

G.        Did the trial court abuse its discretion
by denying appellant=s request for a mistrial? 

In his seventh issue, appellant
complains that the trial court erred in denying his request for a mistrial
when, during closing argument in the punishment phase of trial, the prosecutor
asked jurors to imagine what appellant would do to their children.  Appellant specifically contends that the
State=s
argument impermissibly asked the jurors to place themselves in the position of
the victim.








A trial court=s denial
of a motion for mistrial is reviewed under an abuse-of-discretion
standard.  Simpson, 119 S.W.3d at
272.  A mistrial is the trial court=s remedy
for improper conduct that is Aso
prejudicial that expenditure of further time and expense would be wasteful and
futile.@  Hawkins, 135 S.W.3d at 77.  Only in extreme circumstances, when the
prejudice is incurable, will a mistrial be required.  Id.  

The Mosley[3]
factors, as tailored for punishment proceedings, should be used to evaluate
whether the trial court abused its discretion in denying a mistrial for
improper argument, at least in cases like this one, in which constitutional
rights are not implicated.  See
Hawkins, 135 S.W.3d at 77. 
Therefore, we balance three factors: (1) the severity of the misconduct
(prejudicial effect), (2) curative measures taken by the trial court, and (3)
the certainty of the punishment assessed absent the misconduct, i.e.,
likelihood of the same punishment being assessed.  Id.

In this case, appellant complains
of the following exchange occurring during the punishment-phase summation:

[State:] Who knows what
[appellant] would do if he didn=t have access to what he had access to living in
his own home?  Who knows?  Who knows? 
If he can=t control himself around
his own blood, what will he do to the cute 15-year-old next door? What will he
do to your children or mine? What will he do?

[Defense:] Objection, Your
Honor.

[State:] What will he do?

[Defense:] Improper
argument in front of the jury.

[Court:] Sustained.

[State:] The defense asked
you B

[Defense:] I=m sorry.  May I have a ruling?

[Court:] Yes.  Sustained.








[Defense:] At this time,
Your Honor, we would ask the Court to instruct the jury to disregard.

[Court:] You will
disregard the last statement by the prosecutor.

[Defense:] Request a
mistrial.

[Court:] Denied. 

A.  Severity of the Misconduct

In Hawkins, the
Court of Criminal Appeals noted that prejudice is clearly the touchstone of the
first factor in the Mosley test and that it has equated Aseverity
of misconduct@ with its prejudicial
effect.  See Hawkins, 135 S.W.3d
at 77.  In the instant case, although the
prosecutor mentioned children of the jurors, her comment appears to have been
intended as a plea for law enforcement.  See Martinez v. State, 17 S.W.3d 677, 693
(Tex. Crim. App. 2000).  Immediately before
the objected-to comment, the prosecutor argued:

And just as this case is
not solely about [appellant], it=s also not solely about
[Jane].  It=s also about [Kane].  It=s also about [Lane]. It=s also about Melissa . . .
More importantly, it=s also about justice.  It=s also about what is
right.  And it=s also about the next
victim who lives next door or down the street, that niece or nephew, that
grandchild, that stranger. 








As the State maintains on appeal, this
argument was most likely a proper plea for law enforcement[4]
in that defense counsel had declared appellant fit for probation because he was
Anot a
threat to anybody.@  See Tejerina v. State, 786 S.W.2d 508,
513 (Tex. App.CCorpus Christi 1990, pet. ref=d) (state=s
comments that Athat=s just
one packet of cocaine that one of your children didn=t get in
this county@ was cured by an instruction to
disregard because the State is allowed to argue to the jury that they may
protect the community by assessing a lengthy prison sentence).[5]  Moreover, contrary to the case appellant
cites,[6]
the State did not ask the jurors to place themselves in Jane=s shoes
and mete out punishment accordingly. 

B.  Curative Measures

The second factor clearly weighs
in favor of the State because the trial court promptly instructed the jury to
disregard the prosecutor=s comment
and the State did not pursue the argument.

C.  Likelihood of the Same Punishment Being
Assessed

During the punishment phase, all
three of appellant=s
daughters and Melissa testified.  Jane,
Kane, and Lane testified to appellant=s sexual
abuse of them.  Kane testified concerning
appellant=s attempts to have her perform
oral sex on him.  Lane recounted an
incident that she claimed occurred about four years before the trial.  According to Lane=s
testimony, she was sleeping in between her parents in their bed because she was
having nightmares, and that appellant put his hand inside her pajama pants and
touched her in her Apersonal
spot.@  Lane stated that her mother (Melissa) woke up
and appellant apologized and said he thought it was her mother he was
touching.  Jane testified about the
effect appellant=s actions
have had on her and how they likely will impact the rest of her life.  Melissa testified and affirmed Kane=s and
Lane=s
testimony and described the effects of appellant=s actions
on all of their lives.  

Because the jury heard the
testimony of all three daughters and the mother and assessed punishment near
the low end of the punishment range, it is unlikely that appellant=s
punishment was the result of the jury=s
abandonment of its objectivity .  It is
likely that the same punishment would have been assessed with or without the
prosecutor=s comment. 








After balancing the above three
factors, we conclude that the trial court did not abuse its discretion in
denying appellant=s request
for a mistrial.  Accordingly, we overrule
appellant=s seventh issue.

H.        Does the cumulative effect of the trial court=s errors
require reversal? 

In his eighth issue, appellant
urges that the cumulative effect of the trial court=s errors
requires reversal.  Presuming that a
number of errors may be found harmful in their cumulative effect and looking
only at the appellate issues for which appellant has preserved error in the
trial court, we conclude that appellant has not shown cumulative error.  See Feldman v. State, 71 S.W.3d 738,
757 (Tex. Crim. App. 2002) (holding appellant had not shown cumulative
error).  Accordingly, we overrule
appellant=s eighth issue.

Having overruled all of appellant=s issues,
we affirm the trial court=s
judgment. 

 

/s/        Kem
Thompson Frost

Justice

 

Judgment rendered and
Memorandum Opinion filed October 28, 2004.

Panel consists of Chief
Justice Hedges and Justices Frost and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  For purposes
of this opinion, we have adopted Jane, Kane, and Lane as pseudonyms. 





[2]  The various
theories included (1) at the time of appellant=s
conversations he was either under arrest or substantially deprived of freedom
by the conduct of law enforcement; (2) any statements were involuntary and were
coerced and enticed; (3) appellant was deprived of the right to counsel and did
not make a knowing and intelligent waiver of that right; (4) the statements
were tainted by the allegedly illegal and unlawful detention and arrest; and (5)
the statements allegedly were taken without the safeguards and in violation of
Article 38.22 of the Code of Criminal Procedure.





[3]  Mosley v.
State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). 





[4]  A proper jury
argument must fit in one of four general areas: (1) summation of the evidence;
(2) reasonable deduction from the evidence; (3) answer to argument of opposing
counsel; and (4) plea for law enforcement.  Guidry, 9 S.W.3d at 154. 





[5]  See also
Fields v. State, 2003 WL 22928466, at *2B3 (Tex.
App.CTexarkana Dec. 12, 2003, pet. ref=d) (not designated for publication) (stating that
prosecutor=s comment asking jurors to protect their children as
well as the rest of the community from the appellant was, in context, a proper
plea for law enforcement).





[6]  Boyington
v. State, 738 S.W.2d 704, 709 (Tex. App.CHouston
[1st Dist.] 1985, no pet.).